Ronald Troy HINES, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 20A04–0507–CR–386.

Court of Appeals of Indiana.

Nov. 21, 2006.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Ronald Troy Hines, pleaded guilty to one count of Child Molesting as a Class A felony.[1] Upon appeal, Hines presents four issues for our review, which we renumber and restate as:

I. Whether the trial court erred in ordering Hines to submit to a psychosexual evaluation prior to sentencing;

II. Whether Hines knowingly and intelligently waived his rights under *Blakely* to have the jury find facts used to enhance his sentence;

III. Whether the trial court erred in sentencing Hines;

IV. Whether the trial court committed reversible error in failing to advise Hines of his possible release dates; and

V. Whether the trial court erred in denying Hines's motion to correct error.

We affirm.

The record reveals that on November 1, 2003, Hines, who was then thirty-eight years old, placed his mouth on the vagina of B.C., a friend of Hines's youngest daughter who was staying over at Hines's house that evening. B.C. was eight years old at the time. On February 23, 2004, the State charged Hines with one count of child molesting as a Class A felony. On March 24, 2005, Hines pleaded guilty as charged. After advising Hines of his rights and accepting Hines's plea, the trial

1. Ind.Code § 35–42–4–3 (Burns Code Ed. Repl.2004).

court ordered a "psychosexual evaluation" to be performed.

At a sentencing hearing held on May 12, 2005, the trial court took into consideration the information contained in Hines's pre-sentence investigation report, attached to which was a copy of the psychosexual evaluation report. The trial court, finding that the aggravating circumstances outweighed the mitigating circumstances, sentenced Hines to an enhanced sentence of forty-five years, with five years suspended to probation. On June 3, 2005, Hines filed a motion to correct error claiming that certain letters regarding Hines's character were not produced in time to be available at sentencing and that, considering these letters, the mitigators outweighed the aggravators. The trial court denied the motion on June 13, 2005. Hines filed his notice of appeal on July 8, 2005.

## I

 Upon appeal, Hines first claims that the trial court erred in ordering him to undergo a psychosexual evaluation as part of the pre-sentence investigation. Specifically, Hines claims that the trial court erred in relying upon information contained in the evaluation which he claims was obtained in violation of his right against self-incrimination.[2] The only case Hines cites in support of his claim is *Gardner v. State*, 270 Ind. 627, 388 N.E.2d 513 (1979), wherein the defendant claimed that his right against self-incrimination had been violated where the trial court enhanced his sentence based, at least in part, upon statements made by him which were contained in the pre-sentence investigation report. Gardner argued that "he was not told, before his interview with the probation officer, that what he said could affect his sentence." 270 Ind. at 636, 388 N.E.2d at 519. After noting that other factors supported Gardner's sentence, the court rejected Gardner's argument, writing, "the crucial factor in our determination is that the defendant was informed, even before his trial started, that he had the right to remain silent and that anything he said could be used against him. There is no showing of force or coercion during the interview with the probation officer." 270 Ind. at 637, 388 N.E.2d at 519.

Hines claims that, unlike the defendant in *Gardner*, he was unaware of his right to remain silent "during the presentence process." Appellant's Br. at 13. However, this misreads the *Gardner* opinion. The

2. The focus of Hines's argument is that he told the evaluator about molestation of his elder daughter, an act or acts which were uncharged and unrelated to the molestation of B.C., which prior molestation was then used to enhance his sentence.

In doing so, Hines observes that the evaluation report is not a "neutral, fact centered report" but is an evaluation by the evaluator of a defendant's "attitudes and personality traits" upon which the evaluator makes a recommendation for punishment. Appellant's Br. at 12. Hines cites no authority for his conclusion that "the neutral facts [are] required by statute." *Id.*

We would note that Indiana Code § 35–38–1–9 (Burns Code Ed. Repl.1998), concerning the scope of the pre-sentence investigation and report, does not limit the report to "neu-

tral facts." Seemingly to the contrary, the statute contemplates gathering of information concerning, among other things, the defendant's social history, family situation, and personal habits. The report, furthermore, may include "any matter that the probation officer conducting the investigation believes is relevant to the question of sentence, *and must include: (1) any matters the court directs to be included.*" I.C. § 35–38–1–9(c) (emphasis supplied). In this instance, the trial court ordered the psychosexual evaluation and that evaluation was attached to and made a part of the pre-sentence investigation report. Accordingly, it appears to us that the presence of the evaluation in the record and its consideration by the sentencing court was authorized by the statute.

*Gardner* court did *not* say that a defendant must be informed that he has a right to remain silent during the pre-sentence investigation. Instead, the "crucial factor" was that the defendant had been informed of his right to remain silent "even before his trial started." 270 Ind. at 637, 388 N.E.2d at 519. The same holds true here—Hines was informed of his right to remain silent at the guilty-plea hearing. Moreover, Hines points to no "force or coercion" used during the psychosexual evaluation, other than persistent question-

ing by the interviewing psychologist regarding Hines's sexually deviant behavior.[3] In short, Hines has not established that the trial court erred in ordering him to undergo a psychosexual evaluation or in relying upon such during sentencing.[4]

## II

▮ Hines next argues that he did not knowingly or intelligently waive his rights under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[5] We agree with the State that this

3. Judge Darden's thoughtful dissent expresses a justifiable concern that information gleaned from the defendant's own mouth is then utilized to greatly enhance his sentence. We recognize that the situation presented reflects a tension between the encouragement to a defendant to be honest and forthcoming in the evaluation process and a seeming encroachment upon self-incrimination protections. Nevertheless, we do not perceive it to be within our prerogative to create, *sua sponte*, a solution by holding that a defendant's candor is to be encouraged so that the individual might benefit from appropriate treatment, counseling and rehabilitation, but that such admissions or statements may not be used as an aggravating circumstance so as to enhance a sentence. Any such innovations with regard to the law should more properly emanate from our Supreme Court or from the legislature.

4. We recognize that in *Ryle v. State*, 842 N.E.2d 320, 323 n. 5 (Ind.2005), our Supreme Court disapproved of several opinions in which this court had held that a trial court could enhance a defendant's sentence without a jury determination of probationary status because the defendant "admitted" to being on probation by failing to object to a pre-sentence investigation report indicating that the defendant was on probation. The *Ryle* court wrote that "using a defendant's failure to object to a presentence report to establish an admission to the accuracy of the report implicates the defendant's Fifth Amendment right against self-incrimination." *Id.* The *Ryle* court's comment regarding implication of the right against self-incrimination could be read to call into doubt the *Gardner* court's holding

that the defendant's right against self-incrimination was not violated by the trial court's use of the pre-sentence investigation report. However, because the court in *Ryle* was concerned with a *Blakely* analysis, we understand its comments to be limited to cases where the issue is whether the defendant made an "admission" for *Blakely* purposes. Indeed, prior to *Blakely*, our Supreme Court itself had held that the failure to object to the facts contained in a pre-sentence investigation report precluded a defendant from challenging the validity of those facts upon appeal. *See Howard v. State*, 481 N.E.2d 1315, 1319 (Ind.1985) (concluding that defendant presented no error with regard to prior conviction listed in the pre-sentence report, which he alleged had been overturned upon appeal, where there was no showing that defendant was not furnished a copy of the pre-sentence report prior to his sentencing, that he objected in any way to its contents, or that he was not given an opportunity to explain any item therein stated); *Gardner*, 270 Ind. at 634, 388 N.E.2d at 517–18 (assertions in pre-sentence investigation report will be accepted as true unless challenged by the defendant). As we understand, although the failure to object to facts contained in a pre-sentence investigation report might preclude the defendant from challenging those facts in a non-*Blakely* context, the failure to object does not constitute an "admission" of those facts for purposes of a *Blakely* analysis.

5. In the case before us, the following advisement was given at the guilty plea hearing:

"THE COURT: Under the current state of the law, as a defendant in a criminal case, you have a right to insist that any aggrava-

claim may not be addressed upon direct appeal. Hines's argument is essentially one that the trial court erred in accepting his plea of guilty. *See* Appellant's Br. at 14 ("A trial court shall not accept a plea of guilty from a defendant without first determining the defendant understands the nature of the charges against him and that he is waiving certain constitutional rights."). Although it appears from the state of the current record that there would be little impediment to our viewing the record and determining whether the trial court's advisement of Hines's *Blakely* rights was sufficient, our Supreme Court has made it clear that challenges to the validity of a guilty plea may not be brought upon direct appeal. *See Tumulty v. State*, 666 N.E.2d 394, 395 (Ind.1996); *Collins v. State*, 817 N.E.2d 230, 231 (Ind. 2004).

Perhaps anticipating the State's argument, Hines argues that his case is distinguishable from *Vanzandt v. State*, 730 N.E.2d 721 (Ind.Ct.App.2000), a case in which the defendant, after having been found guilty by a jury, admitted certain prior convictions which were to be used to elevate his conviction to a Class C felony and to establish that he was an habitual offender. Upon appeal, the court noted that the defendant had effectively entered a plea of guilty with regard to the enhancements. *Id.* at 726. The court therefore reasoned that the defendant could seek review of his "guilty plea" only by filing a petition for post-conviction relief. *Id.*

Hines notes that the defendant in *Vanzandt* "pleaded guilty" to the enhancements after a jury verdict during the ini-

tial phase of the trial, whereas here the advisement given to Hines was made at a guilty plea hearing. We are unable to discern any significant difference between these two scenarios. In both, the defendants pleaded guilty, thereby giving up the right to have the jury determine certain facts used for sentence enhancement. As held by our Supreme Court, a challenge to the validity of a plea must be brought by means of post-conviction relief.

### III

Hines's next contention is that the trial court erred in sentencing him. Hines claims that the trial court considered improper aggravating factors and failed to consider certain mitigating factors. Hines also argues that his sentence is inappropriate given the nature of his offense and his character. We address each argument in turn.

■ The trial court found as aggravating factors that Hines was in a position of trust with the victim, that he had two prior misdemeanor convictions and had violated the terms of his probation, and that Hines admitted to having molested his own daughter. The first aggravator Hines challenges is the trial court's determination that he was "in a position of trust" with the victim, B.C. Hines now claims that there was no indication that B.C. was "in his care" on the night the molestation occurred. We are unable to agree. B.C. was spending the night at Hines's house, sleeping in Hines's bed with Hines's younger daughter. Hines admitted that B.C. was "staying at [his] home" on the evening

ting circumstances upon which I rely in sentencing you to a sentence which exceeds the presumptive sentence be proved to a trier-o[f]-fact beyond a reasonable doubt. This is normally done at a trial. Since you are asking to dispose of this case without a

trial, that won't happen. Are you willing to waive your right to insist that any aggravating circumstances which I consider in sentencing you, be proved to a trier-of-fact beyond a reasonable doubt? Guilty Plea Tr. at 15. MR. HINES: Yes."

the molestation occurred. Guilty Plea Tr. at 12. According to the pre-sentence investigation report, Hines further stated, "[B.C.] trusted me when she spent the night at my house." App. at 53. This is tantamount to an admission that Hines was in a position of trust with B.C., which he violated by molesting her. Given these facts, we cannot say that the trial court erred in considering that Hines was in a position of trust with B.C. as an aggravating factor.

■ Hines also complains that the trial court should not have considered his prior criminal history as an aggravating circumstance. Specifically, Hines claims that his criminal history is neither excessive nor related to the instant offense sufficient to justify enhancing his sentence. The pre-sentence investigation report reveals that Hines stated that he had a juvenile record for theft, for which he was ordered to pay restitution and placed on house arrest, but that no juvenile record could be found. As far as Hines's adult criminal record is concerned, he was arrested in 1986 for contributing to the delinquency of a minor, but the disposition of this charge was "nol-lied." App. at 49. In 1987 Hines was arrested for "Desertion/AWOL," but the disposition of this charge was "unknown." [6] *Id.* In 1990, Hines was charged with misdemeanor operating a vehicle without a license, and the disposition of this charge was a "$54 fine and court costs." *Id.* Lastly, in 2001, Hines was charged and convicted of misdemeanor battery, which resulted in a one-year sentence suspended to probation. Hines did violate the terms of his probation, and the trial court extended the term of the probation by six months. The trial court apparently only considered Hines's misdemeanor convictions and his violation of probation as aggravating. We agree with Hines that his criminal history is neither excessive nor directly related to the instant offense. As such, it should not act as a significant aggravating factor. However, it does indicate that Hines has had contact with the criminal justice system in the past, and indeed has two misdemeanor convictions and violated his probation at one point. Although his criminal history is not significant, neither is it irrelevant.

■ Hines also claims that the trial court should not have considered his admission that he had molested his own daughter. During the psychosexual evaluation, Hines admitted that he had molested his older daughter, starting by fondling her when she was nine years old and culminating in having sexual intercourse with her when she was sixteen. Indeed, when sentencing Hines, the trial court listed as a separate aggravating factor that he "admitted molesting his own daughter on repeated occasions, beginning when she was nine years of age." Sentencing Tr. at 9. Upon appeal, Hines claims that using this uncharged prior criminal act as an aggravating factor is akin to a violation of Indiana Evidence Rule 404(b). However, Indiana Evidence Rule 101(c) explicitly states that the rules of evidence, other than those with respect to privileges, "do not apply in ... [p]roceedings relating to ... sentencing, probation, or parole." We therefore disagree that the trial court's consideration of Hines's admission of molesting his own daughter was even akin to a violation of Evidence Rule 404(b).

■ Hines's citation to Justice DeBruler's dissent in *Willoughby v. State,* 552 N.E.2d 462 (Ind.1990) is unavailing. In that case, Justice DeBruler disagreed with the majority, which held that the trial court did not err in considering as an

6. As stated *infra,* Hines was honorably dis- charged from the Army.

aggravating factor that the defendant, who was convicted of the murder of a police officer, admitted to having disposed of the body of a young girl years earlier. *Id.* at 470–71. In so holding, the court noted that a trial court may consider uncharged crimes as part of a defendant's criminal history. *Id.* at 470. Although Justice De-Bruler disagreed, the majority of the court held otherwise.[7] In short, we cannot say that the trial court erred in considering Hines's admission that he had molested his own daughter as an aggravating factor.

Hines next claims that the trial court failed to assign enough weight to the four mitigating factors it found: that Hines pleaded guilty, accepting responsibility for his actions, sparing the victim of the trauma of a trial, and sparing the State the costs of a trial; that Hines enjoyed support from his family; that Hines was honorably discharged from the Army; and that Hines was himself sexually abused as a child. With regard to the first mitigator, however, the trial court felt "constrained to minimize" this factor because:

> "even after entering of the plea ... in this case, [Hines] was less than forthcoming with Dr. Wax [who performed the psychosexual evaluation]. He continually minimized his own responsibility for this heinous act. He makes it seem almost if it was a serendipitous occurrence that could have happened to anybody; that is hardly the case." Sentencing Tr. at 9–10.

▬ We first note that it is for the trial court to determine which mitigating circumstances to consider, and the trial court is solely responsible for determining the weight to accord such factors. *Gray v.*

State, 790 N.E.2d 174, 176 (Ind.Ct.App. 2003). The trial court is not obliged to weigh or credit mitigating factors the way a defendant suggests. *Hedger v. State,* 824 N.E.2d 417, 420 (Ind.Ct.App.2005), *trans. denied.*

▬ Here, even though Hines claims that there is no evidence to support the trial court's conclusion that he minimized his responsibility despite pleading guilty, we have noted before that a guilty plea is not automatically a significant mitigating factor. *Gray,* 790 N.E.2d at 177. A defendant who pleads guilty deserves to have some mitigating weight extended to the guilty plea in return. *Cotto v. State,* 829 N.E.2d 520, 525 (Ind.2005). A guilty plea demonstrates a defendant's acceptance of responsibility for the crime and at least partially confirms the mitigating evidence regarding his character. *Id.* However, a plea is not necessarily a significant mitigating factor. *Id.* (citing *Sensback v. State,* 720 N.E.2d 1160, 1165 (Ind.1999)). In the present case, in exchange for Hines's plea, the State agreed not to file charges in another ongoing investigation, which Hines admits in his brief was an investigation of another claim of child molestation against him. Thus, Hines's plea may have been more of a pragmatic decision than a bona fide effort at taking responsibility. *See Wells v. State,* 836 N.E.2d 475, 479 (Ind.Ct.App.2005), *trans. denied.* The trial court did take Hines's plea into account, as it was required to do under *Cotto, supra,* but there is no error in the trial court's failing to afford that mitigator the substantial weight Hines would have preferred.

---

7. It should be noted that "[a] record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of criminal history." *Cotto v.*

State, 829 N.E.2d 520, 526 (Ind.2005). Be that as it may, in the case before us, as in *Willoughby,* the defendant admitted the criminal conduct.

■ Hines also claims that the trial court failed to assign sufficient weight to the mitigating factor that Hines had himself been abused as a child. In diminishing the weight to be given to this mitigator, the trial court stated that Hines "knew first-hand the emotional trauma that a child suffers when molested, and knowing that, he chose to inflict that trauma on this child and on his own daughter." Sentencing Tr. at 10. Hines now claims that there was no evidence regarding how the victim, B.C., or Hines's daughter felt or how Hines felt as a victim himself. The trial court's explanation is sufficient. Even accepting that Hines was a victim of abuse as a child, the trial court failed to assign this fact much weight because Hines chose to create more victims by becoming an abuser himself. No direct evidence on this issue was required. Further, the trial court was not obliged to afford any weight to Hines's childhood history as a mitigating factor in that Hines never established why his past victimization led to his current behavior. *See Coleman v. State,* 741 N.E.2d 697, 700 (Ind. 2000) (evidence of a "difficult childhood" warrants little, if any, mitigating weight), *cert. denied,* 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001); *Loveless v. State,* 642 N.E.2d 974, 976–77 (Ind.1994) (trial court was not obligated to consider defendant's "overwhelmingly difficult" childhood, which included being molested by her father as an infant, witnessing her father's molestation of her sisters, her cousin, and other young girls, witnessing her father's transvestism, witnessing her parents' multiple attempts to commit suicide, being rejected by her mother due to her lesbianism, and witnessing her father attempting to kill her mother, where there was no indication of how the defendant's admittedly painful childhood was relevant to her level of culpability). We cannot say that the trial court abused its discretion by failing to assign significant mitigating weight to Hines's childhood abuse. With regard to the balancing of the aggravating and mitigating factors, we are unable to say that the trial court abused its discretion in finding that the aggravators outweighed the mitigators and supported an enhanced sentence of forty-five years, with five years suspended to probation.

■ Hines's last attack upon the sentence imposed is to claim that his sentence is "inappropriate." Ind. Appellate Rule 7(B). Pursuant to Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. In this regard, Hines rehashes his argument that the aggravating factors were not significant and that the mitigators, when considered as he would have us consider them, outweigh the aggravators, and therefore his sentence should be revised due to its inappropriateness. In support of this argument, Hines refers to *Walker v. State,* 747 N.E.2d 536 (Ind.2001). In that case, the defendant was convicted of two counts of molesting a six-year-old boy he was babysitting by placing his mouth on the boy's penis. The trial court sentenced Walker to two consecutive terms of forty-five years, with five years suspended upon each count. Upon appeal, our Supreme Court held, under former Appellate Rule 17(B), that the aggregate sentence of eighty years was "manifestly unreasonable." *Id.* at 538. The court observed that crimes against children are "particularly contemptible," that Walker had committed the instant crime while on probation, that Walker had fled jurisdiction, and that the absence of physical injury did not bar an enhanced sentence. *Id.* But the court further noted that the trial court did not find a history of criminal

behavior,[8] that there was no physical injury to the victim, and that separate counts were identical and involved the same victim. Therefore, the court revised the sentence so that Walker's sentences ran concurrently. *Id.*

Here, Hines has a criminal history, albeit a relatively minor one, and there was no evidence of any physical injury to the victim. However, here Hines was not charged with two identical crimes upon the same victim, and he was not ordered to serve two consecutive sentences. Instead, Hines pleaded guilty to one count of child molesting and received a forty-five year sentence, with five years suspended. Although Hines was convicted of only one count, Hines admitted to having molested his older daughter for approximately seven years. Thus, the case before us is not identical to that present in *Walker,* where the defendant had one victim but two convictions. Hines has one conviction but admitted to having molested two victims, one of whom was his daughter. On the whole, we cannot say that, considering Hines's character and the nature of his offense, that a forty-five year sentence, with five years suspended, is inappropriate.

 Hines next claims that the trial court erred in imposing as a condition of his probation that he "refrain from residing within 1 mile of the victim of this offense. . . ." Appellant's App. at 104. Hines claims that by the time he is placed upon probation, the victim, B.C., will be an adult. He argues, therefore, that this condition does not protect the public, and that there is a "possibility" that B.C. might move within a mile of Hines without him even knowing it. Contrary to Hines's claims regarding the trial court's authority to impose such a condition, Indiana Code § 35–38–2–2.3(17) (Burns Code Ed. Repl. 2004) specifically provides that a trial court may require, as a condition of probation, that the defendant "[r]efrain from any direct or indirect contact with an individual." Given what Hines admitted to doing to the victim, we conclude that the trial court's imposition of this restriction was eminently reasonable.

## IV

 Hines next claims that the trial court erred in failing to advise him of his possible release dates. Indiana Code § 35–38–1–1(b) (Burns Code Ed. Repl. 2004) provides that "[w]hen the court pronounces the sentence, the court shall advise the person that the person is sentenced for not less than the earliest release date and for not more than the maximum possible release date." Hines claims, the State agrees, and our review of the record confirms that the trial court, when pronouncing its sentence, did not so advise Hines. However, Hines's brief argument upon this point in no way alleges that he was prejudiced or harmed in any way by the trial court's failure.[9] We will not grant

8. We would note that an absence of a history of criminal behavior would seem to be inconsistent with the fact that Walker had been on probation when he committed the crimes at issue.

9. Indeed, Hines does not explain how the trial court should have determined his possible release dates. Hines was sentenced on May 12, 2005, he spent fourteen days in jail, and he was given fourteen days "good time credit." Thus, his maximum possible release date would have been forty years from May 12, 2005, i.e., May 13, 2045, less the twenty-eight days credit he had already accrued, i.e. April 15, 2045. The Department of Correction's website lists Hines's earliest possible release date as April 27, 2025, although there is no indication as to how the Department arrives at such a date. In the publication titled *Inside the Walls of the Indiana Department of Correction: A Reference Directory for Indiana Judges,* there is a "Glossary of DOC Terms," which includes the following entry:

relief based upon harmless error. *See* Ind. Appellate Rule 66(A).

## V

■ Lastly, Hines claims that the trial court erred in denying his motion to correct error. Attached to Hines's motion were five letters from friends attesting to Hines's character and remorse and asking the trial court to be lenient toward him. According to the motion, these letters "were not produced in time to be submitted to the court for consideration." App. at 115. Upon appeal, Hines claims that the trial court erred in denying his motion in that the letters "could have provided the court with insight as to Hines' character and background." Appellant's Br. at 32. Hines further argues that there is no way to know whether the letters could have been timely filed because the court failed to hold a hearing upon Hines's motion. Hines, however, directs us to no authority which would require a trial court to hold an evidentiary hearing on a motion to correct error. In fact, our research has revealed case law to the contrary. *See Bennett v. State*, 470 N.E.2d 1344, 1347 (Ind. 1984) (rejecting defendant's claim that trial court erred in overruling his belated motion to correct error without an evidentiary hearing).

Moreover, the trial court's order denying Hines's motion indicates that the trial court did indeed view the letters, but concluded that the motion did not warrant relief. The trial court stated that the letters "d[id] not contain information which would justify a change in the sentence previously imposed herein." App. at 126. Upon review of these letters, we are unable to say that the trial court abused its discretion in concluding as it did. The letters are from a friend of Hines who had known him for a year and a half, a childhood friend, Hines's boss, the wife of Hines's supervisor at work, and Hines's ex-wife, all of whom asked the trial court to be lenient in sentencing Hines. Given the valid aggravating factors present, we cannot say that consideration of these letters would have required the trial court to impose a lesser sentence. In short, the trial court did not err in denying Hines's motion to correct error.

The judgment of the trial court is affirmed.

KIRSCH, C.J., concurs.

DARDEN, J., dissents with separate opinion.

DARDEN, Judge, dissenting.

I must respectfully dissent.

I am deeply troubled by the fact that the trial court had ordered Hines to undergo a psychosexual evaluation and then expressly used the information gained from it when imposing sentence. Further, I find that the nature of Hines' criminal history combined with its significant distance in

"EPRD (EARLIEST POSSIBLE RELEASE DATE, also commonly referred to as EARLIEST PROJECTED RELEASE DATE): The date on which an offender would be entitled to discharge or release, taking into consideration:

1. The term of the sentence;
2. The term of any other concurrent or consecutive sentence which the offender must serve;
3. Credit time which the offender has earned prior to sentencing; and,

4. The maximum amount of credit time which the offender would earn if the offender remained in the current credit class during the period of confinement." *Id.* at 100.

Given this, and the possible educational credit time an inmate might earn while incarcerated, it would appear that the "earliest possible release date" is simply an estimate.

time from the offense here render that consideration to be marginal for sentencing purposes. Therefore, because we are unable to determine the weight given by the trial court to the evaluation information, I would remand for resentencing wherein the trial court did not consider Hines' admission during the course of the court-ordered evaluation to uncharged misconduct.