## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2016, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David M. Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William D. Funderburgh III, *Appellant-Defendant,* | December 21, 2016 |
| v. | Court of Appeals Case No. 27A05-1604-CR-867 |
| | Appeal from the Grant Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Dana J. Kenworthy, Judge |
| | Trial Court Cause No. 27D02-1405-FA-10 |

**Pyle, Judge.**

# Statement of the Case

William D. Funderburgh III ("Funderburgh") appeals his sentence imposed following his guilty plea to Class A felony child molesting.[1] Funderburgh appeals his sentence, arguing that the trial court erred in its consideration of aggravators and mitigators and that his fifty-year sentence is inappropriate. Concluding that the trial court did not abuse its discretion when sentencing Funderburgh and that Funderburgh has failed to show that his sentence is inappropriate, we affirm his sentence.

We affirm.

# Issues[2]

1. Whether the trial court abused its discretion when sentencing Funderburgh.

2. Whether Funderburgh's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

---

[1] IND. CODE § 35-42-4-3(a)(1) (2006). We note that under the current version of the child molesting statute, which took effect in 2014, Class A felony child molesting is now a Level 1 felony. Because Funderburgh committed his offense in 2005-2006, we will apply the statute in effect at that time.

[2] Funderburgh sets forth his appellate argument as solely a challenge to the inappropriateness of his sentence. However, interspersed in his inappropriate sentencing argument, Funderburgh challenges the three aggravators found by the trial court as well as the trial court's decision to reject his proffered mitigators. Because a challenge to aggravating and mitigating factors is to be reviewed under a different standard of review than an inappropriate sentencing challenge, we will review these arguments separately.

# Facts

[3] Between September 2005 and September 2006, Funderburgh, who was then thirty-four years old, engaged in sexual intercourse with M.M., who was the eight-year-old daughter of Funderburgh's live-in girlfriend.

[4] Several years later, once M.M. had moved in with her grandmother, M.M. reported what Funderburgh had done to her. Thereafter, on November 5, 2013, the Marion Police Department questioned Funderburgh regarding the child molesting allegations against him. Initially, Funderburgh denied all the allegations. He told police that he "wanted to take a polygraph to clear himself of the allegations." (App. 153).

[5] Three days later, on November 8, 2013, Funderburgh returned to the police station for the scheduled polygraph. Funderburgh then signed a "Polygraph Waiver Form" and an "Agreement of Stipulation of Polygraph Examination," in which he agreed that the results of the polygraph could be used against him in any action that would arise from charges filed against him. (App. 75, 78). The police videotaped Funderburgh as he was interviewed before the polygraph examination, during the polygraph examination, and after the examination. During the post-polygraph interview, Funderburgh stated that he thought of M.M. as his daughter. When officers asked if he could explain why the polygraph showed that he was being deceptive about the question of whether his bare penis had touched M.M.'s bare vagina, Funderburgh first stated that, when he lived with M.M., her mother, and her siblings, they used to walk naked around the house and that his penis might have touched M.M.'s vagina

when he walked by her. He later stated that there had been only one contact that had occurred, and he blamed it on M.M. Specifically, Funderburgh stated that when he was sitting on the toilet having a bowel movement with an erect penis, and M.M. straddled his lap. He later stated that his penis became erect after M.M. sat on him.

[6] In 2014, the State charged Funderburgh with three counts of Class A felony child molesting. Specifically, Count 1 alleged that Funderburgh had engaged in sexual intercourse with M.M.; Count 2 alleged that Funderburgh had performed deviate sexual conduct on M.M.; and Count 3 alleged that Funderburgh had M.M. perform deviate sexual conduct on him.

[7] Prior to trial, Funderburgh's counsel filed a motion in limine, seeking to exclude evidence of the polygraph examination and results. The trial court held a hearing on Funderburgh's motion, and the State introduced, as State's Exhibit 1, the DVD of Funderburgh's November 8, 2014 interviews and polygraph examination.[3] The trial court reviewed the videotape of Funderburgh's pre-polygraph interview, his polygraph examination, and his post-polygraph interview; determined that Funderburgh had knowingly waived his right to counsel prior to the polygraph examination; and denied Funderburgh's limine motion.

---

[3] The transcript of this limine hearing is not included in the record on appeal.

[8] On January 26, 2016, the day of Funderburgh's jury trial, Funderburgh entered an agreement to plead guilty to Count 1 in exchange for the dismissal of Counts 2 and 3.[4] The parties also agreed that sentencing would be open to the trial court's discretion. The factual basis for Funderburgh's offense was laid by Funderburgh's admission to the facts alleged in the charging information for Count 1.

[9] At Funderburgh's sentencing hearing, the State asked the trial court to take judicial notice of the State's Exhibit 1 from the limine hearing, which was the DVD of Funderburgh's November 8, 2014 interviews and polygraph examination. The trial court granted the State's request.

[10] The State also had M.M. present her victim impact statement. When making this statement, M.M. stated that Funderburgh "raped" her in the bathroom when she was eight years old. (Tr. 45). She further explained that Funderburgh had "sexual intercourse with [her] in the bathroom after everyone ha[d] gone to sleep." (Tr. 46). M.M. further stated that Funderburgh had molested her "repeatedly" and explained that it was multiple times a week over

---

[4] It appears that the plea agreement was an oral, not a written plea agreement. We note that INDIANA CODE § 35-35-3-3(a) requires that a plea agreement on a felony charge be made "in writing" and "before the defendant enters a plea of guilty." Recently, we explained that "'[t]he purpose behind [INDIANA CODE § 35-35-3-3] is to insure that a defendant does not base his guilty plea upon certain promises made by the prosecutor where the judge has in fact not accepted the [S]tate's recommendation.'" *Gil v. State*, 988 N.E.2d 1231, 1234 n.2 (Ind. Ct. App. 2013) (quoting *Davis v. State*, 418 N.E.2d 256, 260 (Ind. Ct. App. 1981)). However, we also explained that "failure to reduce an agreement to writing need not itself be deemed a sufficient ground for rejection" of a defendant's guilty plea. *Gil*, 988 N.E.2d at 1234 n.2 (quoting *Centers v. State*, 501 N.E.2d 415, 417-18 (Ind. 1986)).

multiple months. (Tr. 46). Additionally, M.M. stated that Funderburgh had forced her to watch "sex position guide videos" and to look at "porn magazines." (Tr. 54). She further stated that she had been seeing a therapist for a few years and that Funderburgh's actions still affected her.

[11] M.M.'s grandmother ("Grandmother") also presented a statement during the sentencing hearing. Apparently, around 2006 or 2007, the Department of Child Services had removed M.M. from her mother's home and placed her in foster care, where she remained for approximately two years. Thereafter, M.M. moved in with her grandparents. Grandmother stated that when M.M. moved in with her, she "knew something unusual had happened to M.[M.]" and that, at that time, M.M. would crawl into a small space, get into a fetal position, cover herself with a blanket, and "sob[.]" (Tr. 59). Grandmother further stated that M.M. had been in therapy for almost four years before she was able to reveal that Funderburgh had molested her. Additionally, Grandmother stated that Funderburgh had stolen M.M.'s "childhood and innocence" and caused her to feel shame and have low self-worth. (Tr. 60).

[12] When Funderburgh made a statement, he "apologize[d] for what had happened with all of this" and then stated that he wanted to have a jury trial instead of a sentencing hearing. (Tr. 73). The trial court told Funderburgh that he had his chance to have a jury trial and had decided to plead guilty and that the court would proceed with sentencing.

[13] The State argued that, taking into consideration Funderburgh's polygraph examination and interviews, his statements made to the probation officer as part of the presentence investigation report ("PSI"), and M.M.'s sentencing statements, it was clear that Funderburgh blamed M.M. for the molestation. The State requested that the trial court impose a fifty-year sentence.

[14] During the sentencing hearing, Funderburgh's counsel asked the trial court to consider certain mitigating factors, including his difficult childhood of physical and emotional abuse. His counsel also referenced the DVD from Funderburgh's November 2013 police interview and stated that the video showed that Funderburgh was "embarrass[ed]" by "what had happened here[.]" (Tr. 76). Additionally, Funderburgh's counsel argued that Funderburgh was not in a position of trust with M.M. Counsel acknowledged that Funderburgh had a relationship with M.M.'s mother and lived with her, but he argued that there was no position of trust because Funderburgh had never married M.M.'s mother. Funderburgh's counsel requested that the trial court impose a thirty-year sentence with ten years suspended to probation.

[15] When sentencing Funderburgh, the trial court acknowledged that Funderburgh had pled guilty and noted that he had received "some consideration" for it because the State had dismissed two other Class A felony charges. (Tr. 80). The trial court noted that Funderburgh had five misdemeanor convictions. Specifically, in June 2000, Funderburgh was convicted in Wisconsin of criminal damage to property/use of a dangerous weapon and disorderly conduct. In January 2001, he was convicted in Wisconsin of battery (domestic abuse

related) and two counts of disorderly conduct. The trial court found the following aggravating circumstances: (1) Funderburgh's criminal history, which the trial court found to be "a moderate aggravating factor[;]" (2) the age of the victim, which the trial court found to be "a moderate aggravating factor" because M.M. was "an eight year old little girl[;]" and (3) Funderburgh's position of "care, custody[,] and control" of the victim, which the trial court found to be "a very strong aggravating factor[.]" (Tr. 80-81). The trial court also noted that Funderburgh "minimize[d] his own responsibility[] and blame[d] the victim for initiating his victimization of her[,]" and it found Funderburgh's "statements and attitude on this point to be incredible and disturbing." (App. 181).

[16] The trial court imposed a fifty (50) year sentence for Funderburgh's Class A child molesting conviction and ordered it be served in the Department of Correction. Funderburgh now appeals.

# Decision

[17] On appeal, Funderburgh contends that: (1) the trial court erred in it consideration of aggravating and mitigating circumstances; and (2) his sentence is inappropriate. We will review each argument in turn.

## 1. Abuse of Discretion

[18] Funderburgh suggests that the trial court erred by finding the three aggravating circumstances and by rejecting his proffered mitigating circumstances.

[19]     Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490–91.

[20]     Funderburgh suggests that the trial court's use of his criminal history as an aggravating circumstance was erroneous because he had only misdemeanor convictions and was not on probation at the time of the current offense. Funderburgh's challenge to the trial court's aggravator is nothing more than a request to review the weight that the trial court applied to this aggravating factor, which we will not do. *See Anglemyer*, 868 N.E.2d at 491 (explaining that relative weight given to aggravating and mitigating factors is not subject to review). Thus, we conclude that the trial court did not abuse its discretion by considering Funderburgh's criminal history as an aggravating factor.

[21] Next, Funderburgh's challenges the trial court's determination that the victim's age was an aggravating circumstance. Specifically, he contends that such an aggravator was improper because the age of the victim is an element of his offense.

[22] Generally, where the age of the victim is a material element of the crime, the age of the victim may not be used as an aggravating circumstance. *Kien v. State*, 782 N.E.2d 398, 414 (Ind. Ct. App. 2003) (citing *Stewart v. State*, 531 N.E.2d 1146, 1150 (Ind. 1988)), *reh'g denied*, *trans. denied.* "However, the trial court may properly consider the particularized circumstances of the material elements of the crime" to be an aggravating factor. *Id.* (citing *Stewart*, 531 N.E.2d at 1150). For example, a trial court may properly consider as aggravating the age of the victim when the trial court considers that the victim was of a "tender age." *Id.* (citing *Stewart*, 531 N.E.2d at 1150 and *Buchanan v. State*, 767 N.E.2d 967, 971 (Ind. 2002)). Stated differently, we have held that a trial court may properly consider the victim's age as an aggravating factor where "the youth of the victim is extreme." *Reyes v. State*, 909 N.E.2d 1124, 1128 (Ind. Ct. App. 2009).

[23] In *Reyes,* the defendant was convicted of Class A felony child molesting after he had sexual intercourse with a nine year old. *Id.* at 1126. At sentencing, the trial court found the victim's age to be an aggravating circumstance. *Id.* at 1128. On appeal, we rejected Reyes' contention "that the trial court [had] abused its discretion in concluding that the molestation of a nine year old [was] extreme." *Id.* We explained that "[a]lthough the trial judge could have been more specific

in tying the victim's age to the particular nature and circumstances of the offenses, [the court] did refer to the victim's age in conjunction with the molestation that occurred over a period of years." *Id.* Thus, we held that the trial court had not abused its discretion by considering the victim's age as an aggravating circumstance. *Id.*

[24] Here, the trial court noted that M.M. was under the statutory age required for Funderburgh's child molesting conviction. When sentencing Funderburgh, the trial court also commented that M.M. was "an eight year old little girl[,]" and it stated that it was taking into consideration M.M.'s victim impact statement and the effects that Funderburgh's crime had on M.M. (Tr. 81). As a result, it is clear that the trial court's finding concerning M.M.'s age was linked to the particular circumstances of this case, namely the profound impact it had on her young life. Therefore, the trial court did not abuse its discretion by identifying M.M.'s age as an aggravating circumstance. *See, e.g.*, *Reyes*, 909 N.E.2d at 1128 (finding no error in the trial court's use of the nine-year-old victim's age as an aggravating circumstance).

[25] Lastly, we turn to Funderburgh's contention that the position of trust and care aggravator is "not supported by the record." (Funderburgh's Br. 15). In regard to this aggravating circumstance, we have explained as follows:

> The position of trust aggravator is frequently cited by sentencing courts where an adult has committed an offense against a minor and there is at least an inference of the adult's authority over the minor. Moreover, this aggravator applies in cases where the defendant has a more than casual relationship with the victim

and has abused the trust resulting from that relationship. This is usually the case where the defendant is the victim's mother, father or stepparent . . . . Generally, cohabitation arrangements of nearly any character between adults do in fact, and should, establish a position of trust between the adults and minors living or staying together.

*Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007).

[26] Here, Funderburgh was the boyfriend of M.M.'s mother and living in the same house with M.M.'s family. The State argues that "the combination of cohabitation, the intimate relationship between Funderburgh and M.M.'s mother, and his statement that he considered M.M. as his daughter shows that he was in a position of care, custody, or control over M.M." (State's Br. 15-16). We agree. Indeed, the trial court specifically noted that "the evidence support[ed] [the position of trust aggravator] based upon the testimony . . . heard here as well as the video of the defendant's own statements." (Tr. 80-81). Accordingly, the trial court did not abuse its discretion by considering this aggravating circumstance. *See, e.g.*, *Hines v. State*, 856 N.E.2d 1275, 1281 (Ind. Ct. App. 2006) (finding no abuse of discretion where the trial court considered the defendant's position of trust with the victim to be an aggravating circumstance), *trans. denied*.

[27] As with Funderburgh's challenges to his aggravators, we also find without merit his challenge to the trial court's rejection of his proffered mitigating circumstances. Funderburgh contends that the trial court should have

considered his difficult childhood and psychological conditions of depression, bipolar disorder, and anger control as mitigating circumstances.

[28] A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

[29] As for Funderburgh's proposed difficult childhood mitigating factor, he has not shown that the trial court abused its discretion by refusing to assign mitigating weight to this factor where he "never established why his past victimization led to his current behavior." *Hines*, 856 N.E.2d at 1283 (finding no abuse of discretion where the trial court's rejected the defendant's childhood history mitigator). *See also Coleman v. State,* 741 N.E.2d 697, 700 (Ind. 2000) (explaining that evidence of a "difficult childhood warrants little, if any, mitigating weight"), *reh'g denied*, *cert. denied*; *Loveless v. State,* 642 N.E.2d 974, 976-77 (Ind. 1994) (trial court was not obligated to consider the defendant's "overwhelmingly difficult" childhood as a mitigating circumstance).

[30] Similarly, Funderburgh has failed to show that the trial court abused its discretion by finding that his psychological conditions were not entitled to mitigating weight where Funderburgh failed to show a nexus between any such conditions and his crime. *See Corralez v. State*, 815 N.E.2d 1023, 1026 (Ind. Ct. App. 2004) (explaining that "in order for a mental history to provide a basis for

establishing a mitigating factor, there must be a nexus between the defendant's mental health and the crime in question"). Accordingly, the trial court did not abuse its discretion by refusing to assign mitigating weight to his proposed mitigating factors.

**2. Inappropriate Sentence**

Funderburgh contends that his fifty-year year sentence for his Class A child molesting conviction is inappropriate. He requests this Court to reduce his sentence to the advisory term of thirty years.

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224.

When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081.

Here, Funderburgh pled guilty to Class A felony child molesting. A Class A felony has a range of twenty (20) to fifty (50) years with an advisory sentence of thirty (30) years. I.C. § 35-50-2-4. The trial court imposed the maximum term of fifty (50) years for Funderburgh's Class A felony conviction.

[34] Funderburgh focuses much of his appellate argument on a discussion of other inappropriate sentencing cases, trying to compare them to and distinguish them from the facts and sentence in his case. However, we have explained that "[i]n analyzing such [inappropriate sentencing] claims, we [should] '"concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character."'" *Guzman v. State*, 985 N.E.2d 1125, 1134 (Ind. Ct. App. 2013) (quoting *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*), *trans. denied*)).

[35] Turning to the nature of Funderburgh's Class A felony child molesting offense, we note that Funderburgh forced the eight-year-old daughter of his girlfriend to engage in sexual intercourse with him. According to the victim's statement during the sentencing hearing, Funderburgh had "sexual intercourse with [her] in the bathroom after everyone ha[d] gone to sleep[,]" and he did so "repeatedly" over multiple months. (Tr. 46). As the trial court noted, Funderburgh's act of having sex with M.M. was all the more heinous because he was in a position of trust with her.

[36] Turning to Funderburgh's character, we acknowledge that Funderburgh pled guilty; however, he did so on the day of trial and in exchange for the dismissal of two other Class A felony charges. *See Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005) (explaining that "a guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one"), *trans. denied*. We also note that Funderburgh has a criminal history consisting of five misdemeanor convictions. The PSI reveals that, in June 2000, he was placed on probation for one year from his use of a dangerous weapon and disorderly conduct convictions and that, within that probationary period, he committed three additional offenses (battery and two counts of disorderly conduct) in November 2000 and was sentenced for them in January 2001. Funderburgh attempts to minimize his criminal history by arguing that he did not have any prior felony convictions and that his last conviction was somewhat remote in time. We find, however, that his prior criminal history reflects poorly on his character. Additionally, as the trial court noted, Funderburgh "minimize[d] his own responsibility[] and blame[d] the victim for initiating his victimization of her." (App. 181). This too reflects poorly on his character.

[37]     Funderburgh has not persuaded us that his fifty-year sentence for his Class A felony child molesting conviction is inappropriate. Therefore, we affirm the trial court's sentence.[5]

[38]     Affirmed.

Baker, J., and Mathias, J., concur.

---

[5] To the extent that Funderburgh challenges the results of the probation department's risk assessment instruments, we note that the "scores on a probation department's risk assessment instrument 'are not intended to serve as aggravating or mitigating circumstances nor to determine the gross length of sentence[.]'" *Bratcher v. State*, 999 N.E.2d 864, 872 (Ind. Ct. App. 2013) (quoting *Malenchik v. State,* 928 N.E.2d 564, 575 (Ind. 2010)), *trans. denied*. "Instead, these 'offender assessment instruments are appropriate supplemental tools for judicial consideration at sentencing' and can be used by the trial court 'in formulating the manner in which a sentence is to be served.'" *Id. (*quoting *Malenchik,* 928 N.E.2d at 575).