# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREOGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Nov 14 2012, 9:06 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLINTON COUCH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A04-1204-CR-181 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Dennis D. Carroll, Judge
Cause No. 48C06-1112-FA-2195

**November 14, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Twenty-eight-year-old Clinton Couch befriended thirteen-year-old D.K., giving assurances that he wanted to be a "big brother" to D.K., who had recently lost a sister. Far from being a brother to D.K., Couch was, in fact, "grooming" him to be a victim, and it was not long before Couch propositioned D.K. and began molesting him. Over the course of several months, Couch anally penetrated D.K. with his penis and fellated him. Couch made D.K. to do the same to him, to devastating effect. D.K., formerly a "happy-go-lucky" boy, began committing crimes and engaging in self-destructive behavior, hoping that incarceration or death would finally free him from Couch's abuse. Couch also took pornographic photographs of D.K., subjected him to physical violence, threatened to make him "disappear," and was in possession of over one thousand articles of child pornography.

Finally, the day after Thanksgiving, D.K.'s mother was warned by another of Couch's victims to keep her son away from him, and, although D.K. was now safe from further abuse, his innocence is irretrievably lost and he is taking two anti-depressants and will be in long-term counseling. Couch ultimately pled guilty to five counts of Class A felony child molesting, Class C felony child exploitation, and Class D felony possession of child pornography, and the trial court sentenced him to an aggregate sentence of ninety-one years of incarceration. Couch contends that his sentence is inappropriately harsh and that the trial court abused its discretion in admitting, at sentencing, the testimony of two other alleged victims. We affirm.

## FACTS AND PROCEDURAL HISTORY

In July of 2011, twenty-eight-year-old Couch befriended thirteen-year-old D.K. after meeting D.K. through D.K.'s babysitter. D.K.'s sister had died approximately one year previously, and Couch presented himself as a "big brother figure" to D.K., telling him (according to D.K.'s father), "'Hey, you know[,] your sister's deceased and I'll be your brother.'" Tr. p. 37. D.K. did, in fact, think of Couch as a brother, and Couch also befriended D.K.'s parents. Couch would take D.K. out for bowling or pizza and over to Couch's parents' home to swim.

One day, Couch asked D.K. if he had ever had a blow job. When D.K. replied that he had not, Couch fellated him against his wishes. Between July and late November of 2011, Couch performed anal sex on D.K.; fellated D.K. against his wishes; caused D.K. to perform fellatio and attempt anal sex on him; and took pictures of D.K. naked, including poses where his penis was visible and another where D.K. spread his buttocks to show his anus. Couch and D.K. exchanged between five and eight "blow jobs[.]" Tr. p. 9. Couch downloaded the images of D.K. onto his computer and had D.K. wear a blue thong, wrestling singlet, and "butt plug[,]" which Couch also wore. Tr. p. 9. D.K. witnessed child pornography on Couch's computer. At times when swimming, Couch "would come up to [D.K.] and just like kick [him] real hard and it didn't feel good at all." Tr. p. 48. Couch told D.K. at times that he would make him "disappear[.]" Tr. p. 49. Once, Couch tied D.K. with a rope and threw him into the swimming pool.

After a few months of spending time with Couch, D.K.'s behavior had changed for the worse, to say the least. D.K. became disruptive, began breaking into cars in an attempt to be arrested and committed to juvenile detention, flew into rages, told others that he wanted to kill himself, and did in fact attempt suicide at least once. On "Black Friday" of 2011, seventeen-year-old J.M. approached D.K.'s mother in a Walmart and told her, "I hear that [Couch is] hanging out with [D.K.] and I need to tell you something because he is not a good guy" and "[Couch] is a bad guy. He molests children." Tr. pp. 30, 34.

The Indiana State Police were soon contacted, and met with D.K. on November 25, 2011. On November 26, 2011, State Police executed a search warrant at Couch's residence, recovering over one thousand examples of child pornography, wrestling singlets, and "butt plugs[.]" Tr. p. 62. Among the photographs recovered, one depicts a juvenile male being anally penetrated by an adult male, another depicts one juvenile male fellating a second while being anally penetrated by a third, and a third photograph depicts a juvenile male urinating on another. State's Exs. 1, 2, 3.

On December 1, 2011, the State charged Couch with five counts of Class A felony child molesting,[1] Class C felony child exploitation,[2] Class D felony intimidation, and Class D felony possession of child pornography.[3] On February 27, 2012, in exchange for not filing charges related to other alleged victims who had come forward, Couch plead guilty to five

---

[1] Ind. Code § 35-42-4-3 (2011).

[2] Ind. Code § 35-42-4-4(b) (2011).

[3] Ind. Code § 35-42-4-4(c).

counts of Class A felony child molesting, Class C felony child exploitation, and Class D felony possession of child pornography.

On March 22, 2012, the trial court held a sentencing hearing. Among others, J.M. and fourteen-year-old A.B. testified for the State. J.M. testified that he and Couch had engaged in frequent fellation of each other when J.M. was between the ages of ten and fourteen. A.B., who is related to Couch by marriage, testified that, beginning when he was thirteen, Couch "was always asking to perform oral sex and for [A.B.] to give him oral sex … every time we were alone and his parents weren't at his house." Tr. p. 59. A.B. testified that this occurred approximately ten to fifteen times. Couch objected to the above testimony on the basis that it should not be usable to support a finding that multiple victims were an aggravating circumstance, but conceded that it was relevant for character purposes. The trial court found, as aggravating circumstances, Couch's violation of trust, the repeated sexual assaults of a particularly vulnerable child, the pattern of depravity Couch has exhibited, and that the victim "will spend the rest of his life reliving from time to time these assaults and trying to move on[.]" Tr. p. 93. The trial court found, as mitigating circumstances, Couch's lack of criminal record, his guilty plea, and the "good parts" of his life as described by his family. Tr. p. 93. The trial court sentenced Couch to forty years of incarceration for each child molesting conviction, eight years for child exploitation, and three years for possession of child pornography. The trial court ordered child molesting Counts I through III to be served concurrently with one another but consecutive to Counts IV and V, which would also be served concurrently with one another; the child exploitation sentence to be served

consecutively to the child molesting sentences; and the possession of child pornography sentence to be served consecutively with the others, for an aggregate sentence of ninety-one years of incarceration.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Abused its Discretion in Admitting Certain Evidence

Couch claims that the trial court abused its discretion in admitting the testimony of J.M. and A.B. The admission of testimony at a sentencing hearing is at the discretion of the court. *Rabadi v. State*, 541 N.E.2d 271, 277 (Ind. 1989). "Indiana Evidence Rule 101(c) explicitly states that the rules of evidence, other than those with respect to privileges, 'do not apply in … [p]roceedings relating to … sentencing, probation, or parole.'" *Hines v. State*, 856 N.E.2d 1275, 1281 (Ind. Ct. App. 2006), *trans. denied*.

Couch's argument in this regard is essentially that the admission of J.M.'s and A.B.'s testimony amounts to a circumvention of his plea agreement because the trial court allegedly used their testimony to enhance his sentences and order some of them to be served consecutively. *See, e.g.*, *Roney v. State*, 872 N.E.2d 192, 201 (Ind. Ct. App. 2007) ("If a trial court accepts a plea agreement under which the State agrees to drop or not file charges, and then uses facts that give rise to those charges to enhance a sentence, it in effect circumvents the plea agreement."), *trans. denied*. There is, however, no indication in the record that the trial court did this. The trial court did not find that Couch's uncharged conduct was an aggravating circumstance warranting the imposition of enhanced and consecutive sentences, and, indeed, did not even mention it in imposing sentence. Although Couch claims that the

6

evidence in question "poisoned the well and led to the trial court sentencing Couch more harshly[,]" this is pure conjecture supported by nothing in the record. Appellant's Br. p. 11. Couch has failed to establish that the trial court abused its discretion in this regard.

## II. Whether Couch's Sentence is Inappropriate

We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). As previously mentioned, the trial court sentenced Couch to an aggregate ninety-one years of incarceration.

The nature of Couch's crimes was particularly egregious. Couch chose a particularly vulnerable victim who was already dealing with the recent loss of a sibling and, in exploiting

7

that weakness to satisfy his depraved desires, compounded the tragedy exponentially. Instead of acting as a "big brother" to D.K. in a time of need, Couch betrayed D.K.'s trust and violated him in the vilest possible fashion, on multiple occasions fellating or sodomizing him or causing D.K. to perform those acts on him. As if this were not bad enough, Couch violated D.K. further by taking pornographic images of him, did physical violence to him, and suggested that he might "disappear." We have a difficult time imagining how a person could violate a person worse than Couch did D.K.

The effect of Couch's crimes on D.K. has been profound. A few months into his relationship with Couch, D.K., a formerly "well-mannered" and "happy-go-lucky" boy, became disruptive and self-destructive. Tr. pp. 29, 37. D.K. committed crimes in an attempt to be taken away from Couch, threatened to kill himself "just to get away from [Couch,]" and had to be put in a facility called the Anderson Center when he actually attempted suicide. Tr. p. 43. D.K. will "probably be in counseling for a very long time" and is currently taking two anti-depressants, Welbutrin and Prozac. Tr. p. 31. The nature of Couch's offenses fully justifies his sentence.

As for Couch's character, we cannot say that we see much in the record to recommend it. Couch's character is that of a sexual predator who preys on the vulnerable, and, in this case, he chose an exceptionally vulnerable victim. Couch also indirectly contributed to the exploitation and molestation of perhaps hundreds of other children, being in possession of over one thousand articles of child pornography. Couch's argument in this regard is essentially that his lack of prior criminal history and guilty plea warrant a significant sentence

8

reduction. We cannot agree. We do not put much stock in Couch's lack of criminal history, given evidence that he serially molested at least one other boy and attempted to serially molest a third.[4] Couch also admitted that he had been collecting child pornography, a criminal activity, for "several years." Tr. p. 84. Under the circumstances, we also cannot say that Couch's guilty plea warrants a sentence reduction.

Finally, the record as a whole, in our view, supports the conclusion that Couch's guilty plea was a pragmatic decision, as opposed to reflecting a true acceptance of responsibility for his crimes. Couch's guilty plea was given in exchange for assurances that no other charges would be brought against him related to his alleged abuse of others, presumably including, if not necessarily limited to, J.M. and A.B. A.B.'s testimony would have supported ten to fifteen Class A felony charges, and J.M.'s apparently would have supported many more.[5] Couch also seems to lack an understanding of his crimes and the damage he has caused, referring to them at sentencing as "a mistake" and a "wrong decision." Tr. p. 78. Finally, Couch's claim at sentencing that "what [he] did was not something [he] could control" fatally undercuts any argument that he accepts responsibility for his actions. Couch has failed to establish that his ninety-one year sentence is inappropriate.

We affirm the judgment of the trial court.

---

[4] As previously mentioned, while Couch objected that evidence from J.M. and A.B. regarding prior molestation and attempted molestation could not be used by the trial court to enhance his sentence, he *conceded* that it was relevant as it related to his character. Essentially, this means that while the trial court might have been restricted in how it was able to use the evidence, we are not prevented from considering how it illustrates Couch's character in our appellate consideration of the appropriateness of his sentence.

[5] Although J.M. was not clear as to how many times he and Couch had fellated each other, he testified that they had done so frequently over a four-year period.

9

ROBB, C.J., and BAKER, J., concur.