**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 05 2014, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**HEATH Y. JOHNSON**
**SUZY ST. JOHN**
JOHNSON, GRAY & MACABEE
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DWAYNE CARTER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 41A01-1401-CR-3 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Cynthia Emkes, Judge
Cause No. 41D02-1207-FA-6

**December 5, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Dwayne Carter appeals his conviction of and sentence for two counts of Class A felony child molesting,[1] two counts of Class B felony sexual misconduct with a minor,[2] two counts of Class D felony dissemination of matter harmful to minors,[3] and one count of Class D felony possession of child pornography.[4] Carter presents two issues for our review:

1. Whether the trial court abused its discretion when sentencing him; and

2. Whether his 100-year sentence is inappropriate in light of his character and the nature of his offense.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Carter was a long-term friend of J.M.'s family. During the summer of 2007, when J.M. was fourteen years old, J.M. moved in with his grandmother and began visiting Carter and mowing Carter's lawn. After a few visits, Carter gave J.M. a back rub and then began to rub J.M.'s buttocks and perform oral sex on J.M. Thereafter, J.M. visited Carter and spent the night at Carter's house. Carter engaged in sexual activity with J.M. every time J.M. visited him. On some occasions, they watched pornography together.

At one point, when J.M.'s family was going through a rough time, Carter and J.M.'s mother agreed J.M. would live with Carter, in order to provide structure and a male role model. Carter continued to engage J.M. in sexual activity. After J.M. started dating a girl

---

[1] Ind. Code § 35-42-4-3(a)(1) (2012).
[2] Ind. Code § 35-42-4-9(a)(1) (2012).
[3] Ind. Code § 35-49-3-3(a)(1) (2012).
[4] Ind. Code § 35-42-4-4(c) (2012).

during his sophomore year of high school and moved out of Carter's home, the sexual encounters stopped - largely due to the fact that J.M. would visit Carter only if he had someone with him, in order to ensure he was never alone with Carter.

In 2010, Carter offered to take J.M.'s younger brother, H.M., fishing and swimming. H.M. was eleven or twelve years old at the time. Carter repeatedly told H.M. that "he had a porno that he was going to put in that night." (Tr. at 121.) Once Carter started the pornographic movie, he proceeded with H.M. as he had with J.M. - by rubbing H.M.'s legs and then his buttocks. The next morning H.M. woke up to Carter performing oral sex on him. However, H.M. was scared and pretended to still be asleep. Eventually, Carter stopped. Carter had made H.M. aware that he had a gun, and H.M. was afraid that Carter would use it on him; however, there is no evidence that Carter actually threatened him. H.M. did return to spend the night at Carter's home several times over the next two years. On those occasions, Carter would play pornographic movies or require H.M. to pick one for them to watch. Carter also showed H.M. pornographic playing cards and magazines. Carter displayed pornographic material and performed oral sex on H.M. once or twice a month from the summer of 2010 until the summer of 2012. Additionally, Carter and H.M. exchanged pictures of their genitals on their cell phones.

In 2012, J.M., his girlfriend, and their child moved in with Carter. J.M. saw a text message from his younger brother on Carter's cell phone. The text contained a picture of H.M.'s genital area. J.M. then informed the police.

The State charged Carter with two counts of Class A felony child molesting, two

3

counts of Class B felony sexual misconduct with a minor, two counts of Class D felony dissemination of matter harmful to minors, and one count of Class D felony possession of child pornography. A jury found Carter guilty of all seven charged counts. At his sentencing, the judge found seven aggravating factors: Carter has a criminal record, Carter did more harm than necessary to commit the crime, Carter committed multiple offenses over a time period, H.M. was under fourteen, Carter violated a position of trust, Carter used pornography to lure his victims, and Carter is at risk to re-offend. The court also found two mitigating factors: Carter had kept stable employment, and Carter had the support of his family. The court then decided the aggravating factors outweighed the mitigators and ordered two thirty-five year sentences to be served consecutively,[5] two fifteen-year sentences to be served consecutive to one another and to the two thirty-five year sentences,[6] and three three-year sentences to be served concurrent with all other sentences.[7] His aggregate sentence is one hundred years.

## DISCUSSION AND DECISION

### 1.    Abuse of Discretion

Carter claims the court abused its discretion in finding three of the court's seven aggravating factors. Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Cardwell v. State*, 895 N.E.2d

---

[5] The advisory sentence for Class A felony child molest is thirty years, with a range of twenty to forty years. Ind. Code § 35-50-2-4.

[6] The advisory sentence for Class B felony sexual misconduct with a minor is ten years, with a range of three to sixteen years. Ind. Code § 35-50-2-5.

[7] The advisory sentence for Class D felony possession of child pornography is one and one-half years, with a range of six months to three years. Ind. Code § 35-50-2-7.

4

1219, 1222 (Ind. 2008). A trial court may impose any sentence within the allowable range for a given crime without a requirement to identify specific aggravating or mitigating circumstances. *Id.* The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence. *Id.* The reasons given are reviewable on appeal for abuse of discretion. *Id.* The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse. *Id.*

Carter contends two of the court's aggravators were material elements of his crimes. A trial court may not use the very elements of the crime as aggravators to enhance a sentence unless the circumstances are very egregious. *See Edrington v. State,* 909 N.E.2d 1093, 1097 (Ind. Ct. App. 2009) (using victim's age as aggravator is not appropriate unless victim is particularly young), *trans. denied.* The trial court cited the use of pornography and the ages of J.M. and H.M. (fourteen to sixteen years old and twelve to fourteen years old, respectively) during the times the molestations occurred. We agree with Carter that the court should not have included these elements of his crimes as aggravators.

As for the third alleged erroneous aggravator, Carter asserts that, because he was declared a sexually violent predator, *see* Ind. Code § 35-38-1-7.5(b) ("A person who: (1) being at least eighteen (18) years of age, commits an offense described in: . . . IC 35-42-4-3 as a class A or class B felony . . . is a sexually violent predator."), the court could not cite the risk that he would reoffend as an aggravator. We disagree. The finding that Carter is a statutory SVP was neither an element of the crimes of which he was convicted, nor used to

enhance the length of his sentences; rather, that finding results in a requirement that Carter register as an SVP after he is released from prison. *See* Ind. Code § 35-38-1-7.5(f). As such, Carter has not demonstrated the trial court abused its discretion in finding an aggravator in his high risk of committing additional molestations in the future. *See* Ind. Code § 35-38-1-7.1(c) ("The criteria listed in subsections (a) and (b) do not limit the matters that the court may consider in determining the sentence.").

Although the court should not have listed two of the seven aggravators, the court placed a great deal of weight on the fact that Carter was in a position of trust with these children and had committed these acts over a period of many years: "these were crimes that occurred over multiple years with multiples [sic] victims with sufficient time to stop and reflect . . . the victims were under the care of the defendant. . . . I don't really think it's a close call in this case." (Tr. at 367-68.) In light of the remaining aggravators, we are left without doubt the court would have imposed the same sentences even had it not found improper aggravators. *See, e.g.*, *Edrington*, 909 N.E.2d at 1101 ("In light of the minimal weight the sentencing court assigned to the mitigators and the importance it assigned to the "position of care" aggravator, we can say with confidence the trial court would have imposed the same sentence even if it had not considered the improper aggravator . . . ."), *trans. denied.* Accordingly, we hold the trial court did not abuse its discretion when it sentenced Carter.

2.    Inappropriate Sentence

Carter also claims his one-hundred-year sentence is inappropriate.

We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in

6

light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State,* 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

*Couch v. State*, 977 N.E.2d 1013, 1017 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*.

The appellant bears the burden of demonstrating his sentence is inappropriate. *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*.

As to his character, Carter asserts that he has had stable employment, he has family support, his prior criminal history is not related to the current conviction, and he is not likely to reoffend. The court took into consideration the fact of Carter's employment and did not place substantial weight on Carter's prior criminal history. However, the Court disagreed as to his likelihood to reoffend. The court found "[t]here was enough time to stop and take responsibility for what happen [sic] and perhaps turn yourself in, but that didn't stop [you]." (Tr. at 367.) The court also was unable to find that Carter "has much humanity" when he breached the position of trust that he had with the boys. (*Id*. at 370). We agree with the trial court and find that Carter's exploitation of his position of trust does not speak well of his character. Further, Carter's long-term grooming and molestation of these children reveal his

7

predatory nature.

As to the nature of the offenses, Carter "acknowledges the fact of two victims and repeated violations over a long period warrant enhanced and consecutive sentences." (Appellant's Br. at 16.)  We agree.  *See, e.g., Couch*, 977 N.E.2d at 1018 (ninety-one year sentence found to be appropriate when criminal activity occurred over a lengthy time period).

Carter's offenses were of a nature to warrant an enhancement of his sentence.  His character is such that he was able to reconcile harming two brothers over a lengthy period of time.  Carter has not demonstrated his one-hundred-year sentence is inappropriate.  Accordingly, we affirm.

Affirmed.

VAIDIK, C.J., and FRIEDLANDER, J., concur.