**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 30 2014, 9:07 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DEMERIUS SHAW, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1403-CR-207 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark Stoner, Judge
Cause No. 49G06-1201-MR-2614

**December 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Demerius Shaw appeals his conviction of and sentence for murder.[1]  Shaw presents three issues for our review:

1.      Whether the court erred by permitting the testimony of a jailhouse informant;

2.      Whether the State presented sufficient evidence to sustain his conviction; and

3.      Whether Shaw's sixty-year sentence is inappropriate.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Prior to January 2, 2012, Shaw had been living with Levita Dorsey.  In a text conversation with "Freaky" at 7:05 p.m. on January 2, Shaw wrote "Man, I gotta find somewhere to go before somebody dies."  (Tr. at 292.)  Freaky asked Shaw where he was, and Shaw responded, "At Vita crib.  This bitch trippin' cuz she might be the victim."  (*Id*. at 293-94.)  When Freaky asked what Vita is going to be a victim of, Shaw responded at 7:12 p.m., "To die."  (*Id.* at 294-95.)  At 10:30 p.m. on January 2, Shaw contacted Dorsey's cousin, Eugene Foy, for a ride.  Foy was unable to pick up Shaw.  Later, Shaw's mother found a place for Shaw to stay with her co-worker, Herman Addison.

Around 11:00 p.m. on January 2, as Dorsey was walking home from work, she was shot in the head.  She was dead when police arrived.  Three juveniles told police Dorsey and the shooter, an African-American male, argued immediately before they saw a flash and Dorsey fell.  Dorsey's family told police Shaw had been living with Dorsey, and he became a suspect.

---

[1] Ind. Code § 35-42-1-1 (2011).

On January 4, 2012, police found Shaw and two other men at Addison's apartment. Police recovered a handgun from beneath the couch where Shaw had been sitting, and ballistics tests indicated it was the gun used to shoot Dorsey. DNA testing of blood found on Shaw's shoe could not exclude Dorsey as the origin, and Shaw's phone contained the incriminating texts. The autopsy revealed Dorsey was shot in the back of the head from a distance of three to four inches.

The State charged Shaw with murder. At trial, the State filed notice of an additional witness – Kobe Blake – who had been a cellmate with Shaw. Shaw objected and the court granted a continuance so the defense could investigate the witness. When trial resumed, Blake testified Shaw admitted he and Dorsey had been arguing the night of the shooting and "some little kids" had seen him. (*Id.* at 273.) On February 12, 2014, a jury found Shaw guilty of murder. The court imposed a sixty-year sentence and ordered it served consecutive to a fifty-year sentence ordered by a federal court for unrelated crimes.

## DISCUSSION AND DECISION

1. <u>Admission of Evidence</u>

Shaw asserts the court abused its discretion when it allowed Blake to testify because the State was aware of Blake for almost two years before the commencement of the trial but did not disclose he would be called to testify.

"Trial courts have the discretion to exclude a belatedly disclosed witness when there is evidence of bad faith on the part of counsel or a showing of substantial prejudice." *Williams v. State,* 714 N.E.2d 644, 651 (Ind. 1999), *cert. denied*. "The most extreme sanction of

3

witness exclusion should not be employed unless [the party's] breach has been purposeful or intentional or unless substantial and irreparable prejudice would result . . . ." *Wiseheart v. State,* 491 N.E.2d 985, 991 (Ind. 1986). "In light of a defendant's right to compulsory process under the federal and state constitutions, there is a strong presumption to allow the testimony of even late-disclosed witnesses." *Williams,* 714 N.E.2d at 651. *See* U.S. Const. Amend. 6; Ind. Const. Art. I, § 13. "Where a party fails to disclose a witness timely, courts generally remedy the situation by providing a continuance rather than disallowing the testimony." *Fields v. State*, 679 N.E.2d 1315, 1319 (Ind. 1997).

Shaw and the State agree the State was aware of Blake for almost two years before the commencement of the trial. However, the State contends, the original deputy prosecutor did not "find his statement useful and did not intend to call him as a witness." (Appellee's Br. at 10.) When another deputy prosecutor took over the case he interviewed Blake and found him very credible. The State also asserts it did not, for security reasons, disclose Blake would be a witness until he had been moved to another Department of Correction facility. As soon as Blake was moved, the State notified the court and Shaw.

Shaw objected and the court granted a continuance so Shaw could investigate Blake. The court decided the State had not acted in bad faith. The court did not err in permitting Blake's testimony. *See Cook v. State*, 675 N.E.2d 687, 691 (Ind. 1996) (a continuance, rather than exclusion, is the appropriate remedy for the late disclosure of a witness).

2.    Sufficiency of Evidence

Shaw asserts all of the evidence, other than Blake's testimony, was circumstantial and

4

not sufficient to uphold his conviction. Our standard of review is well-settled:

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (quotations, citation, and footnote omitted) (emphasis in original). "A conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Long v. State,* 935 N.E.2d 194, 198 (Ind. Ct. App. 2010), *trans. denied*.

Shaw was charged with "knowingly or intentionally kill[ing] another human being." Ind. Code § 35-42-1-1(1). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

Shaw contends the blood on his shoe was from living with Dorsey and the gun was not proven to be his. Even if the jury disregarded Blake's testimony, the State presented DNA evidence, ballistic evidence, telephone records, text messages, and other evidence from

5

which it is reasonable for the jury to infer Shaw intended to commit this murder. Shaw is inviting us to reweigh the evidence or judge the credibility of the witnesses, and this we will not do. *See, e.g., Brakie v. State*, 999 N.E.2d 989, 997 (Ind. Ct. App. 2014) (court does not reweigh evidence when the reasonable inferences permitted the trier of fact to determine guilt beyond a reasonable doubt), *trans. denied.*

### 3. Inappropriate Sentence

Shaw contends his sentence is inappropriate because it is to be served consecutive to his fifty-year federal sentence for another murder.

> We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State,* 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

*Couch v. State*, 977 N.E.2d 1013, 1017 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*.

The appellant bears the burden of demonstrating his sentence is inappropriate. *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*.

The sentence for murder is "between forty-five (45) and sixty-five (65) years, with the

6

advisory sentence being fifty-five (55) years." Ind. Code § 35-50-2-3. The court imposed a sixty-year sentence, and ordered it served consecutive to a fifty-year federal sentence. In determining whether to sentence a defendant to consecutive or concurrent terms:

> [T]he court may consider the:
> (1) aggravating circumstances in IC 35-38-1-7.1(a); and
> (2) mitigating circumstances in IC 35-38-1-7.1(b);
> in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time.

Ind. Code. § 35-50-1-2(c). A single aggravating circumstance may be sufficient to support an enhanced sentence and to impose consecutive sentences. *Cox v. State*, 780 N.E.2d 1150, 1161 (Ind. Ct. App. 2002).

Shaw's offense was "an impulsive, immature act arising out of a petty domestic dispute." (Appellant's Br. at 16.) He states "[i]t was just a senseless killing of a family friend." (*Id.*) The trial court found "it would be against common sense and sound public policy for an individual to get a murder sentence for free or a victim for free." (Tr. at 348.) *See also Bostick v.* State, 804 N.E.2d 218, 226 (Ind. Ct. App. 2004) (consecutive sentence found within the court's discretion so Bostick served time for the deaths of all three of her children), *reh'g denied.* Shaw shot a woman in the back of the head because of a disagreement about living arrangements. We cannot say the order that this sentence be served consecutive to another sentence for a separate murder is inappropriate in light of the nature of the offense.

As for his character, Shaw states his childhood was such that "it is not surprising that

7

he has a history of juvenile offenses beginning at a young age, as well as one felony conviction as an adult." (Appellant's Br. at 16.) Shaw asserts the most compelling factors we should consider are his age and immaturity, because he was only nineteen when he committed these crimes. Shaw had an extensive juvenile history, but the court did not give that much weight. However, the court did find Shaw's adult criminal history was extensive and violent. Shaw had been involved in the murders of two people before he killed Dorsey. The trial court found Shaw's age was not a mitigator as he had a chance to reflect on his actions after two other murders, yet committed murder again. *See Monegan v. State*, 756 N.E.2d 499, 504 (Ind. 2001) ("[a]ge is neither a statutory nor a *per se* mitigating factor"). *See also Corcoran v. State*, 774 N.E.2d 495, 500 (Ind. 2002) (noting sixteen is the age where the law requires special treatment), *reh'g denied.* None of Shaw's assertions convince us his sentence is inappropriate for his character, and thus we hold Shaw's sentence is not inappropriate.

## CONCLUSION

The trial court did not abuse its discretion by allowing the testimony of a last minute witness, the State presented sufficient evidence to support Shaw's conviction, and Shaw has not demonstrated his sentence is inappropriate based on his character or the nature of his offense. Accordingly, we affirm.

Affirmed.

VAIDIK, C.J., and FRIEDLANDER, J., concur.

8