## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 28 2020, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher C. Crawford
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua A. McClure, *Appellant-Defendant,* | August 28, 2020 |
| v. | Court of Appeals Case No. 20A-CR-261 |
| | Appeal from the Elkhart Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Charles Carter Wicks, Judge |
| | Trial Court Cause No. 20D05-1812-F6-1895 |

**May, Judge.**

[1] Joshua A. McClure appeals his conviction of Class A misdemeanor operating a vehicle while intoxicated endangering a person.[1] McClure also asserts his three-and-a-half year aggregate sentence for Level 6 felony resisting law enforcement,[2] Class A misdemeanor operating a vehicle while intoxicated endangering a person, Class B misdemeanor possession of marijuana,[3] and Class C misdemeanor possession of paraphernalia[4] is inappropriate. We affirm.

# Facts and Procedural History

[2] On December 19, 2018, at approximately 8:30 p.m., Indiana State Trooper Aaron Price observed a silver Chevrolet Malibu, later determined to be operated by McClure, traveling "90 or 91" miles per hour on the Indiana Toll Road where the posted speed limit is "70 miles an hour." (Tr. Vol. II at 36.) Trooper Price started following McClure, who pulled off at the nearest exit and stopped to pay a toll. Trooper Price observed, when McClure tried to pay his toll, that

> maybe something was a little off just because he was trying to swipe his ticket through the credit card slot. He did that like seven times until he eventually figured out that that wasn't working, so he put it – he finally got it put in the correct place and then – at the kiosk [it] told him to pay $4, so he starts putting

---

[1] Ind. Code § 9-30-5-2(b).

[2] Ind. Code § 35-44.1-3-1(a)(3).

[3] Ind. Code § 35-48-4-11(a)(1).

[4] Ind. Code § 35-48-4-8.3(b)(1).

> $1 bills and I watched him put three paper bills in the machine, and it looked like he was maybe having a little trouble getting it fed in there and he was just kind of like fumbling over the bills.

(*Id*. at 38-9.)

[3] After going through the toll plaza, Trooper Price activated his lights and siren to initiate a traffic stop of McClure's vehicle. McClure "made a sharp U-turn, squealing his tires, and then headed back onto the Toll Road through the entrance ramp . . . he broke down the gate going through there." (*Id*. at 39.) Trooper Price following McClure onto the Toll Road and radioed dispatch to inform them he was in pursuit of McClure's vehicle. The pursuit proceeded on the Toll Road traveling east at speeds of up to ninety miles per hour.

[4] Trooper Price called Indiana State Trooper Scott Hipscher for backup. Trooper Hipscher indicated he would deploy stop sticks to attempt to end the pursuit. As Trooper Price and McClure approached Trooper Hipscher's location, McClure made a U-turn and began traveling west on the Toll Road. Trooper Price testified that, when heading westbound,

> we increased the speed dramatically. We're running about 112 miles an hour. Traffic was fairly light at that time in that area, but there were still vehicles on the road, so he was – you know, if they weren't seeing us come up behind them, he was either passing them on the shoulder – you know, it's because we're approaching him so quickly, it was like a jerky motion to get on or switching lanes to go around them on [sic] the other lane, if you could do that. So it was very erratic as far as that goes on the speeds and then how he was changing lanes to continue.

(*Id*. at 43.)

[5] Indiana State Police Detective Ben Warner was off duty in the area and joined in the pursuit. He deployed stop sticks approximately ten miles from the location where McClure made a U-turn west, but McClure avoided them by driving on the shoulder. McClure's speeds continued to be around 110 to 112 miles per hour. McClure approached the Notre Dame exit of the Toll Road, and the traffic became more congested. McClure forced motorists off the road, drove on the shoulder, and changed lanes frequently. As McClure came closer to the Notre Dame exit, he again made a U-turn and began traveling east on the Toll Road to further evade authorities.

[6] McClure eventually exited the Toll Road, where he hit stop sticks set up in an intersection. McClure came to an immediate stop upon hitting the stop sticks because his rear tire went flat. Officers ordered McClure out of the car, but instead McClure "stuck his right hand out of the window . . . [then] he put both hands out of the window but then he would retract one hand, keeping one hand out, and then sometimes he would retract the other hand, so there was [sic] no hands out." (*Id*. at 50.) McClure then swung his legs out of the car, exited the vehicle, and held up "a large bottle of Fireball Whiskey[.]" (*Id*. at 51.) Trooper Price testified the bottle was "approximately half full" and McClure took a "swig [lasting] maybe a second or two." (*Id*. at 59.) After McClure took the drink, he replaced the cap, tossed the bottle back into the vehicle, and surrendered to police. The entire pursuit lasted "[a]pproximately 20 to 23 minutes." (*Id*. at 52.)

[7]     Upon approaching McClure's vehicle after McClure's arrest, Trooper Price saw a "glass smoking pipe" and "rolling papers" in the door handle area. (*Id*. at 57.) Officers searched McClure's vehicle incident to his arrest and found

> besides the bottle of Fireball Whiskey that was open, there was also a bottle of Smirnoff Vodka that was opened, a small bottle of Southern Comfort Whiskey that was opened. There were several cans, taller cans of Mike's Hard Lemonade. There were some of them that were open and some of them that were not opened.

(*Id*. at 58.) They also found a "small green jar that had a latch on it that had suspected marijuana inside of that, as well as another glass smoking pipe that was there with burnt residue on that" (*id*. at 58-9), and two other containers "that were labeled with commercial labels that were clearly sold from a dispensary, that had THC warnings on them, and then inside those were located marijuana as well." (*Id*. at 59.)

[8]     Trooper Price testified regarding McClure's physical appearance at the scene:

> The first thing I noticed was the overwhelming odor of alcohol that was coming from his breath and on his person. He also – he eyes were almost closed, kind of like half closed. They were very red, bloodshot and watery. His balance was not good. And as I was asking him the few questions I did, what his name was and why he was running, his speech was extremely slurred to the point to where I had to ask him several times because I just simply couldn't understand what he was telling me. . . . He seemed very confused and sleepy, kind of out of it.

(*Id*. at 55.) McClure refused to take field sobriety, breath, and blood tests. Police obtained a search warrant to complete a blood draw, and a technician

obtained a blood sample shortly after midnight, which was approximately three hours after the pursuit ended. The test revealed McClure's blood alcohol level was ".235 plus or minus .017 grams per 100 milliliters of blood." (*Id*. at 168.) His blood also tested positive for active THC. Sheila Arnold, an forensic toxicologist from the Indiana State Department of Toxicology, testified McClure's blood alcohol level was ".27 to a .33 at the time of driving[.]" (*Id*. at 175.) Arnold calculated, based on McClure's height and weight, that he had consumed "somewhere between 11.6 and 14.4 standard drinks." (*Id*. at 173.)

[9] On December 26, 2018, the State charged McClure with Level 6 felony resisting law enforcement, Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia. On February 8, 2019, the State added a charge of Class A misdemeanor operating a vehicle while intoxicated endangering a person. On December 5 and 6, 2019, the trial court held a jury trial. During opening argument, McClure stated:

> A search of the car yielded marijuana and paraphernalia. Those obviously could be reasons why Defendant did not stop for the police. And, in fact, ladies and gentlemen, like I said, there's a lot in this case that is not in dispute.
>
> We are not here to tell you that he did not run from the police. There's no getting around it. He did it. He took off, he resisted by vehicle. We're not here to argue about that. They found some drugs. They're going to tell you that. You can't change that fact. You can't make it go away. We're not disputing that.

(*Id*. at 28-9.) The jury returned guilty verdicts on all charges.

On January 6, 2019, the trial court sentenced McClure to 900 days for Level 6 felony resisting law enforcement, to be served consecutive to one year for Class A misdemeanor operating a vehicle while intoxicated endangering a person. Those sentences were to be served concurrent with concurrent sentences of 180 days and 60 days for Class B misdemeanor possession of marijuana and Class C misdemeanor possession of paraphernalia, respectively, for an aggregate sentence of 1,265 days, or approximately 3.5 years incarcerated.

# Discussion and Decision

## Sufficiency of the Evidence

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the fact-finder's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the fact-finder's verdict. *Id*. We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the fact-finder's decision. *Id*. at 147.

[12] To prove McClure committed Class A misdemeanor operating a vehicle while intoxicated endangering a person, the State had to present sufficient evidence he operated a vehicle while intoxicated "in a manner that endangers a person." Ind. Code § 9-30-5-2(b). In relevant part, the statute defines "intoxicated" as "under the influence of . . . (1) alcohol . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. McClure contends the State did not present evidence he was intoxicated because "[f]or 20 to 23 minutes McClure was able to allude officers positioned on both sides of the Toll Road" at high rates of speed and he adapted to law enforcement presence by taking "swift action" and "turning around and heading in an alternate direction on at least two occasions." (Br. of Appellant at 16.) He also claims that his sobriety was evident based on "his actions of removing himself from the vehicle he was driving and walking approximately 20 feet backwards to officers . . . [and that] [h]e was able to ascertain what the officers had commanded, and then able to perform it by walking backwards to law enforcement to be detained." (*Id.*)

[13] Impairment can be proven based on evidence of: "(1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech." *Vanderlinden v. State*, 918 N.E.2d 642, 644 (Ind. Ct. App. 2009), *trans. denied*. The State presented evidence of each of these factors. First, the State presented evidence that McClure's blood alcohol level was ".27 to a .33 at the time of driving" (Tr. Vol.

II at 175), which indicated he had consumed "somewhere between 11.6 and 14.4 standard drinks." (*Id.* at 173.) McClure argues the State did not discount the possibility that his elevated blood alcohol level resulted from the drink of Fireball whiskey he took upon exiting his vehicle; however, this argument ignores the multiple half empty alcohol bottles found in his car following his arrest.

[14] The State also presented testimony from Trooper Price that McClure had difficulty paying his toll at the Toll Plaza, at one point swiping his toll ticket in the credit card slot and then struggling to put the dollars to pay the toll in the proper slot. Upon exiting his car after the pursuit, McClure seemed "very confused and sleepy, kind of out of it." (*Id.* at 55.) Officer Price also testified that McClure's eyes were "very red, bloodshot and watery" when McClure was removed from his vehicle following the chase, that "the overwhelming odor of alcohol [] was coming from his breath and his person" and "his balance and stature" were "poor." (*Id.*) McClure's arguments to the contrary are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh the evidence or judge the credibility of witnesses). We conclude the State presented sufficient evidence to prove that McClure was operating a vehicle while intoxicated. *See Monjar v. State*, 876 N.E.2d 792, 794-5 (Ind. Ct. App. 2007) (open liquor bottles in the front seat of the vehicle Monjar was driving; high blood alcohol content; red, glassy eyes; and strong odor of alcohol

coming from Monjar was sufficient to prove that he operated a vehicle while intoxicated), *trans. denied*.

[15] To prove McClure was intoxicated "in a manner that endanger[ed] a person," Ind. Code § 9-30-5-2(b), the State had to present evidence "showing that the defendant's condition or operating manner could have endangered any person, including the public, the police, or the defendant." *Vanderlinden*, 918 N.E.2d at 644. Endangerment does not require "a person other than the defendant be in the path of the defendant's vehicle or in the same area to obtain a conviction." *Id*. at 644-45. McClure argues the State did not present evidence that he endangered another person because, while traveling at a high rate of speed, he was "able to successfully maneuver between vehicles in front of himself without causing an accident." (Br. of Appellant at 16.)

[16] While intoxication alone is not enough to prove the endangerment element, the evidence is sufficient to prove a person was intoxicated in a manner that endangers another if the person drove in excess of the speed limit. *Vanderlinden*, 918 N.E.2d at 646. McClure engaged in a pursuit for over twenty minutes at speeds that ranged, at times, between 90 and 110 miles per hour. He made illegal U-turns, drove on the shoulder, and forced cars onto the shoulders in an effort to avoid his "very jerky" and "very erratic" driving. (Tr. Vol. II at 43.) McClure's arguments to the contrary are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh the evidence or judge the credibility of witnesses). The State presented sufficient evidence to prove

McClure operated his vehicle while he was intoxicated in a manner that endangered a person.  *See Staley v. State*, 895 N.E.2d 1245, 1251 (Ind. Ct. App. 2008) (evidence that Staley was exceeding the speed limit was sufficient to prove endangerment), *trans. denied*.

## Inappropriate Sentence

[17]     Sanders argues his sentence is inappropriate[5] in light of his character and the nature of his offense.  Our standard of review on this issue is well settled:

> We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. Appellate Rule 7(B).  "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied."  *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted).  "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case."  *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).  In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and

---

[5] The State argues McClure has waived his sentencing argument because McClure does not make a cogent argument regarding the inappropriateness of his sentence and does not provide a standard of review despite arguing that the trial court abused its discretion when it sentenced him.  We decline the State's invitation to waive his argument, as we prefer to address issues on their merits.  *See Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) ("whenever possible, 'we prefer to resolve case on the merits' instead of on procedural grounds like waiver" (quoting *Roberts v. Cmty. Hospitals of Indiana, Inc.*, 897 N.E.2d 458, 469 (Ind. 2008))).

recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

*Couch v. State*, 977 N.E.2d 1013, 1017 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*. The appellant bears the burden of demonstrating his sentence is inappropriate. *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*.

[18] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State,* 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). The sentencing range for a Level 6 felony is six months to two and one-half years with an advisory sentence of one year. Ind. Code § 35-50-2-7(b). A sentence for a Class A misdemeanor may not be more than one year. Ind. Code § 35-50-3-2. A sentence for a Class B misdemeanor may not exceed 180 days. Ind. Code § 35-50-3-3. A sentence for a Class C misdemeanor may not be more than sixty days. Ind. Code § 35-50-3-4. The trial court sentenced McClure to 900 days, or approximately two and one-half years for Level 6 felony resisting law enforcement to be served consecutive to one year for Class A misdemeanor operating a vehicle while endangering a person. Those two sentences were to be served concurrent with a 180-day sentence for Class B misdemeanor possession of marijuana and a 60-day sentence for Class C misdemeanor possession of paraphernalia, for an aggregate sentence of three and one-half years. McClure challenges his aggregate sentence.

[19]     McClure received the maximum sentence for each of his convictions, but he did not receive the aggregate maximum sentence for his crimes, as some of those sentences were ordered served concurrent to others. In a matter of just over twenty minutes, McClure led multiple police officers from multiple law enforcement agencies on a high-speed chase on the Indiana Toll Road. Speeds exceeded ninety miles an hour, McClure made multiple illegal U-turns to evade police, passed vehicles on the shoulder of the road, avoided stop sticks meant to end the pursuit, and forced vehicles to the shoulder of the road to avoid his erratic driving. When the chase eventually ended after the deployment of stop sticks, McClure did not immediately exit his vehicle. When he did, officers observed he had bloodshot eyes and smelled of alcohol. At trial, an expert testified McClure's blood alcohol limit when he was driving was likely almost three times the legal limit, suggesting, based on McClure's height and weight, that McClure had consumed between eleven and fourteen alcoholic beverages. Police also found marijuana, smoking paraphernalia, and half-empty liquor bottles in plain sight in McClure's vehicle. Based on the totality of the circumstances of McClure's crimes, we cannot say his sentence was inappropriate.

[20]     When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). McClure has a lengthy criminal history comprised of crimes similar to those involved herein. Since 1996, McClure has been convicted over twenty times in six states of crimes including driving while suspended,

possession of marijuana, bail jumping, theft, operating a vehicle while intoxicated, loitering, battery, disorderly conduct, and indecent exposure. McClure had active warrants for his arrest in two states at the time he committed these crimes. He also has violated the terms of probation multiple times.

[21] McClure argues his sentence is inappropriate because he participated in "various programs while incarcerated" awaiting trial.[6] (Br. of Appellant at 20.) These programs included "Roadmap to Recovery, . . . Impact of Crime on Victims program, the Life After Incarceration program, . . . Financial Peace program as well as the Inside-Out Dad[7] program." (Tr. Vol. II at 38.) However, McClure's recent alleged attempt to "improve himself" (*id.* at 39), does not diminish the litany of crimes he has committed over the last twenty years. Therefore, we cannot say McClure's sentence is inappropriate based on his character. *See Speer v. State*, 995 N.E.2d 1, 14 (Ind. Ct. App. 2013) (sentences higher than the advisory not inappropriate based on defendant's extensive criminal history of similar offenses), *trans. denied.*

---

[6] McClure also argues the trial court abused its discretion when it did not "appropriate[ly]" consider his participation in these programs as a mitigator when sentencing him. (Br. of Appellant at 13.) During McClure's sentencing hearing, the trial court noted, "I don't find any mitigating factors, other than your recent attempts to rehabilitate yourself through some educational programs." (Tr. Vol. III at 42.) As the trial court is not required to find mitigating factors or give them the same weight that the defendant does, *Flickner v. State*, 908 N.E.2d 270, 273 (Ind. Ct. App. 2009), we conclude the trial court did not abuse its discretion when it sentenced McClure.

[7] It is unclear why McClure participated in a parenting program, as his pre-sentence investigation report indicated he did not have children.

# Conclusion

[22] We hold the State presented sufficient evidence that McClure was intoxicated and that he endangered others by operating a vehicle while intoxicated. Additionally, his sentence is not inappropriate based on the nature of his crimes or his character. Accordingly, we affirm.

[23] Affirmed.

Robb, J., and Vaidik, J., concur.